IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHERVON HOGSETT, individually,
and as Administratrix of the
Estate of PATRICIA JOYNER,
deceased, and GARY JOYNER,
individually,

        Plaintiffs,

        CIVIL ACTION NO.

v.        1:12-cv-1399-JEC

PARKWOOD NURSING &
REHABILITATION CENTER, INC.,
PARKWOOD LIVING CENTER, LLC,
HMR ADVANTAGE HEALTH SYSTEMS,
INC., SCEPTER HEALTH & REHAB OF
SNELLVILLE, LLC, COVENANT DOVE,
INC., COVENANT DOVE, LLC,
COVENANT DOVE HOLDING COMPANY,
LLC, ARK HOLDING COMPANY, INC.,
and ARK HOLDINGS, LLC,

        Defendants.

## ORDER & OPINION

This case is before the Court on defendants' Motion to Dismiss or, Alternatively, to Stay Proceedings and Compel Arbitration [4] and defendant Covenant Dove Holding Company, LLC's Motion to Dismiss for Lack of Personal Jurisdiction [3]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion to Dismiss, or Alternatively, to Stay Proceedings and Compel Arbitration [4] should be **DENIED** and that

defendant Covenant Dove Holding Company, LLC's Motion to Dismiss for Lack of Personal Jurisdiction [3] should be **GRANTED as unopposed.**

## BACKGROUND

On March 11, 2010, a long-term care facility, the Parkwood Nursing and Rehabilitation Center ("Parkwood") admitted a 63-year old female, Patricia Joyner.  Doctors had recently amputated the lower portion of Joyner's left leg, and the goal of Joyner's stay at Parkwood was to enable her to regain limited mobility so that she might live on her own with caregiver assistance. (Pls.' Compl. [1-1] at 8-9.)  Joyner was listed in "fair" condition upon her arrival at Parkwood, and there is no indication that she was not coherent or that she was unable to make decisions.  (*Id.*)

At the time of Joyner's admission to Parkwood, her daughter, Shervon Hogsett, signed numerous papers on her mother's behalf. (Defs.' Mot. to Dismiss or, Alternatively, to Stay Proceedings and Compel Arbitration [4] ("Defs.' Mot. to Dismiss") at Exs. A & B (the admission and arbitration agreements, respectively).)  The arbitration agreement is quite broad, covering all potential disputes related to Joyner's stay at Parkwood, including any questions of contract interpretation or any torts arising from Joyner's residence.[1]

---

[1]   "Claims Subject To Arbitration: Any and all claims or controversies arising out of or in any way relating to the Resident's stay at the Living Center including the care and treatment received by the Resident at the Living Center shall be submitted to binding arbitration pursuant to the Federal Arbitration Act.  This right to

The agreement explicitly provides:  "This agreement to arbitrate constitutes a waiver of the right to a trial by jury." (*Id.* at Ex. B.)

On the last page of the arbitration agreement, below the sentence "I AGREE TO THE TERMS OF THIS AGREEMENT TO ARBITRATE," there is a blank line in which the name of the resident is to be printed and a line where the signature of the resident is to be affixed.  On the line calling for the printing of the resident's name is the correct name of that resident: "Patricia Joyner." The signature line for the resident, however, is not completed.  Just below this section, there are two lines for the "legal representative/caretaker": a line to print the name and a line for that person's signature.  The printed name and signature,[2] respectively, of Shervon Hogsett, have been affixed on these lines, and the line calling for the date has been filled in as being "3-11-10." Finally, just below the lines for the legal representative are two lines calling for the printed name and signature of the Living

_____

demand arbitration includes, without limitation, disputes regarding interpretation of this Agreement, disputes arising under state or federal law, either currently existing or arising in the future, including claims for statutory, compensatory, or punitive damages and claims based on breach of contract, tort, negligence, or breach of statutory duties." (*See* Arbitration Agreement, attached as Ex. B to Defs.' Mot. to Dismiss [4] at 1.)

[2]  Written in pen next to the signature of Ms. Hogsett is an "x," which presumably was inserted by the Parkwood representative to show Ms. Hogsett where to sign.

Center representative, both of which have been completed with the name of "Cara Waiswilos," as well as the date "3/11/10." (*Id.*)

An admission agreement was also presented to daughter Shervon Hogsett for her signature. (Defs.' Mot. to Dismiss [4] at Ex. A.) It notes that the term "resident" refers to the resident,

> or where applicable to any person who may under Georgia law, act on the resident's behalf when the resident is unable to act for himself or herself, or where applicable any person who the resident has delegated decision-making authority. The resident's incapacity or delegation of decision-making authority must be documented in the living center's records in compliance with applicable Georgia statutes. The resident must provide copies of any existing powers of attorney, court orders or other applicable documentation prior to admission.

(*Id.* at 2.)

The Admission Agreement contains several pages of information about the care to be provided by the Center, as well as the financial obligations of the resident. At the conclusion of the agreement, there is an authorization for payment and release of information, with accompanying signature lines. (*Id.* at 12.) There is a line for "signature," which was completed by "Shervon J. Hogsett," and witnessed by "CWaisilos." Below that signature line is the following admonition: "**Note**: If the resident is unable to sign, complete authorizing signature Section below." Under that note is a line marked for "Authorized Signature and Relationship" and "Reason Resident Could Not Sign." In the block for authorized signature and relationship was the hand-written abbreviation "dtr," which

4

presumably meant "daughter," and in the block for the reason why the
resident could not sign were the hand-written words, "not present."
(*Id.*)

In short, Hogsett signed the Arbitration Agreement for her
mother, Patricia Joyner, who signed none of the admissions paperwork.
Although Ms. Hogsett signed under the blank calling for "legal
representative/caretaker," both parties agree that Hogsett had no
legal status as her mother's representative.[3]  That is, Hogsett had
no power of attorney nor was she her mother's guardian, nor has there
been any indication by defendants that Hogsett stated to staff that
she had any such legal status.

Eight days after Joyner was admitted, Joyner's doctor provided
Parkwood with a recommendation regarding the treatment of a wound on
Joyner's partially amputated left leg.  (Pls.' Compl. [1-1] at 9.)
From March 19 until March 22, 2010, according to plaintiffs, no one
at Parkwood acted on the doctor's recommendation, leading to a
deterioration in Joyner's condition.  By the time she received
treatment, Joyner's leg was infected beyond repair, and Joyner died
in a nearby hospital on March 26, 2010--fifteen days after her
admittance to the facility.

---

[3]  Whether or not Hogsett was her mother's caretaker is something
not discussed in the briefing.

5

Plaintiffs are Joyner's daughter, Ms. Hogsett, and Joyner's husband, Gary Joyner, who have sued defendant Parkwood and affiliated entities, alleging negligence, breach of contract, wrongful death, and other claims. Plaintiff Hogsett and Gary Joyner have brought claims in their individual capacities. Plaintiff Hogsett also originally brought claims in her representative capacity, as the representative of Joyner's estate, but has now dismissed those claims.[4]

Defendants seek to dismiss plaintiffs' claims[5] and to compel arbitration on those claims, based on the arbitration agreement signed by Hogsett. Plaintiffs argue that the arbitration agreement is not binding on them, as Ms. Joyner, the resident of the facility, never signed the agreement and as Hogsett had no authority to bind her mother to such an agreement. Defendants argue that the

---

[4]   Plaintiff Hogsett voluntarily dismissed any estate claims, after the defendants moved to dismiss those claims as a result of plaintiffs' failure to submit an affidavit from an appropriate medical affiant confirming the existence of medical malpractice, which affidavit was required by Georgia law to be submitted along with the complaint. (*See* Defs.' Mot. to Dismiss [2] and Pls.' Notice of Voluntary Dismissal Without Prejudice of Pls.' Estate Action Only [5].)

[5]   Defendant Covenant Dove Holding Company also filed a motion to dismiss for lack of personal jurisdiction [3]. Plaintiffs filed two separate consent motions for an extension to respond [9, 13], which were granted by the Court. The last requested extension expired on September 4, 2012. Plaintiffs have never filed a response and, accordingly, the Court **GRANTS** this defendant's motion to dismiss as being unopposed. *See* LR 7.1B, NDGa (failure to file a response shall indicate that there is no opposition to the motion).

6

plaintiffs should be bound by Ms. Hogsett's signature on the arbitration agreement.

**DISCUSSION**

I.   **ENFORCEABILITY OF ARBITRATION AGREEMENT AS TO CLAIMS NOT MADE BY PLAINTIFF SHERVON HOGSETT IN HER INDIVIDUAL CAPACITY: THAT IS, ALL ESTATE CLAIMS AND INDIVIDUAL CLAIMS MADE BY HUSBAND GARY JOYNER**

   A.   Claims at Issue

As noted above, two types of claims were originally brought in this case: claims brought on behalf of the estate by its representative Shervon Hogsett and claims brought by the individual plaintiffs, Shervon Hogsett and Gary Joyner.   The parties do not address how these claims differ, but as defendants arguably have a stronger ground to justify their arbitration against plaintiff Shervon Hogsett as to her individual claims, than as to Hogsett as the representative of the estate,[6] it is important to have some idea what the differences might be.   The Court assumes that estate claims would be those claims that would have been available to Ms. Joyner had she not died, such as any pain and suffering she endured and medical expenses she incurred, as a result of the defendants' alleged negligence, as well as any funeral expenses, given that she did, in fact, die.   The individual claims would be those claims available to

---

[6]   *See* discussion *infra* at 21, *et seq.*

7

daughter Hogsett and husband Gary Joyner based on the death of their mother and wife, respectively.

As noted, plaintiff Hogsett, as the representative of the estate, has dismissed all estate claims, apparently because she did not file a medical affidavit as required by Georgia law for medical malpractice claims. *See* O.C.G.A. § 9-11-9.1. Defendants suggest in their briefing[7] that this means that the only claims left are the wrongful death claims[8] of the two individual plaintiffs: Shervon Hogsett and Gary Joyner. The Court will assume this to be so.

Yet, while it is true that the estate claims are now gone, it is still important to analyze the effect of the arbitration agreement on any such estate claims. This is so because if the decedent Joyner agreed to arbitrate any claims against defendants, then presumably her survivors on a wrongful death claim would be bound by that agreement as a wrongful death claim would be derivative of the medical malpractice claim that the decedent could have made.

---

[7]   (*See generally* Defs.' Reply Br. in Supp. of Their Mot. to Dismiss or, Alternatively, to Stay Proceedings and Compel Arbitration ("Defs.' Reply Br.") [12] and Mot. to Dismiss [2-1] at 2 n.2 ("The 'Estate claims' include all claims brought on behalf of the Estate of Patricia Joyner by her personal representative or administrator (in other words, all claims in this case other than the wrongful death claims).")(emphasis added).)

[8]   Implicit in defendants' argument is an assumption that a medical affidavit does not have to be filed in a wrongful death claim, even when the latter claim is based on an act of medical malpractice.

Conversely, if the arbitration agreement is deemed to be invalid and not binding on decedent Joyner or her estate, then it presumably would not be binding on her survivors' individual wrongful death claim.

     B.   <u>Did Hogsett Have the Power to Bind Her Mother to an Arbitration Agreement</u>?

     1.   Parties' Contentions

Defendants correctly note that federal law favors the enforceability of arbitration agreements, even if there is arguably inconsistent state law disfavoring arbitration. *See generally Marmet Health Care Ctr., Inc. v. Clayton Brown*, 565 U.S. ___, 132 S. Ct. 1201 (2012)(per curiam)(Federal Arbitration Act permits enforcement of arbitration agreement entered into between residents and nursing homes, despite potentially contrary state law)(citing U.S. Const., art. VI, cl. 2). While states may have a strong interest in "protect[ing] the residents of Georgia nursing homes," (Pls.' Resp. [8] at 16), this policy does not preclude care facilities and their residents from contracting to resolve potential disputes through arbitration.[9]

---

[9]   Plaintiffs had also argued that even if Hogsett did have authority to sign for Joyner, the arbitration agreement is void because its enforcement would hinder the efficacy of O.C.G.A. § 31-8-100 *et seq*, Georgia's "Bill of Rights for Residents of Long Term Care Facilities." (Pls.' Resp. [8] at 15-16.) The *Marmet* decision by the Supreme Court defeats that argument. At any rate, given the Court's ruling, plaintiff's argument on this point is moot.

That said, an arbitration agreement is still a contract and, as such, it requires consent by the parties to the agreement. Consent to a contract is a matter of state law. Federal Arbitration Act, 9 U.S.C. § 2 (permitting revocation of arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract"); *Ashburn Health Care Ctr., Inc. v. Poole*, 286 Ga. App. 24, 25 (2007)("[a]s the party seeking arbitration, [the defendant] bears the burden of proving the existence of a valid and enforceable agreement to arbitrate. . .[s]uch [an] agreement is, at base, a contract, and the [FAA] does not require parties to arbitrate when they have not agreed to.")(internal quotation omitted). Thus, before the scope or applicability of the arbitration agreement can be addressed, the party seeking to compel arbitration--here the defendants--must first establish that there is an agreement. *TranSouth Fin. Corp. v. Rooks*, 269 Ga. App. 321, 324 (2004)(party seeking to enforce arbitration agreement "must bear the burden of proof as to all the essential elements of the contract, including the assent to the contractual terms.")

Both parties agree that Hogsett signed the arbitration agreement upon her mother's admittance to Parkwood. The parties disagree, however, about whether that signature gave rise to a valid agreement between decedent Joyner and the defendants.

Plaintiffs argue that Hogsett did not have authority to bind her mother to an agreement to arbitrate potential claims against the defendants.   In support of this argument, plaintiffs note that Hogsett did not have a power of attorney agreement for, or guardianship over, her mother.   Further, Hogsett stated in her declaration that Joyner had not given her permission to sign the admission documents on her behalf.   (Decl. of Shervon Hogsett [8-1] at ¶ 11.)   Additionally, defendants offer neither an assertion nor any evidence that decedent Joyner had told the Parkwood Center staff that Hogsett could act on her behalf.   Finally, defendants have not suggested that Joyner was incapable of making decisions for herself at the time of her admittance, as she was only 63-years old and her particular malady apparently did not implicate any mental functioning on her part.

Defendants counter that even if Hogsett did not have express authority to act as an agent for Joyner, she had implied/apparent authority, and so Hogsett's signature should be construed as binding her mother.   Further, defendants say, while Joyner may not have been present when her daughter signed the admission forms, Joyner never protested that Hogsett was signing forms for her, nor did she protest her admittance to Parkwood, so Joyner's consent to an arbitration agreement is implied from the circumstances.   (Defs.' Reply Br. [12] at 3-4.)

2.   Standard for Determining Whether Authority Existed
Under These Facts

As the decedent Patricia Joyner never signed the arbitration agreement, her daughter Shervon Hogsett's signature on that agreement can bind Joyner and her estate only if Hogsett is deemed to have been an agent of her mother for this purpose.  According to Georgia law, "[T]he relation[ship] of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." O.C.G.A. § 10-6-1.

Here, there is no indication that Joyner expressly authorized her daughter to agree to arbitrate away any claims that may have arisen during Joyner's stay.  To the contrary, Hogsett has filed a declaration indicating that she did not discuss her signature on the paperwork with her mother and, therefore, express consent by the latter was necessarily lacking.

Defendants do not disagree,[10] but they contend that Hogsett acted with implied authority,[11] meaning that Hogsett would still have

_____

[10]  Defendants would like discovery on all potential grounds for enforcing the arbitration agreement.  Given the Court's ruling *infra*, there is no need for discovery, as defendants do not seek to compel arbitration of Gary Joyner's claims and as the Court has directed plaintiffs to file an amended complaint setting out more clearly the individual capacity claims of Hogsett.

[11]  The Court is aware that, from a purist's point of view, "implied authority" and "apparent authority" are two distinct concepts, with implied authority being a form of actual authority and

12

authority to enter contracts on Joyner's behalf.  "[S]uch authority must be based on 'statements or conduct of the *alleged principal* [that] reasonably cause [a] third person to believe that the principal consents to have the act done on [her] behalf by the purported agent.'" *Ashburn*, 286 Ga. App. at 25-26 (quoting *Hinely v. Barrow*, 169 Ga. App. 529, 530 (1984)).

Therefore, for implied authority to have arisen, the principal must have given some indication that she agreed to be represented by the agent.  *See Barrs v. Acree*, 302 Ga. App. 521, 525 (2010)(implied agency relationship was not found, where a party "merely assumed" that an agent was acting for another); *Hinely v. Barrow*, 169 Ga. App. 529, 530 (1984)("[W]here the only evidence that a person is an agent of another party is the mere assumption that such agency existed, or an inference drawn from the actions of that person that he was an agent of another party, such evidence has no probative value and is insufficient to authorize a finding that such an agency exists.") Whether an individual has implied authority to act as an agent to execute contracts on behalf of another is a fact-sensitive inquiry,

---

apparent authority constituting a different kind of authority.  See generally Restatement (Third) of Agency §§ 2.01-2.03 (2006) (discussing difference between implied authority and apparent authority).  The Georgia caselaw and the Georgia statute cited above collapse the two terms and, whatever distinctions may have originally existed between the two principles, they don't affect the outcome here.  Accordingly, the Court likewise uses the term "implied authority" to reference both implied and apparent authority.

dependent on the circumstances. *Larkins v. Boyd*, 205 Ga. 69, 72 (1949)("Existence of an agency may be established by proof of circumstances, apparent relations, and conduct of the parties").

>    3.    Whether Hogsett Had Authority to Bind Her Mother to An Arbitration Agreement, Under the Facts of this Case

In the present case, Joyner never made any statements that would suggest to defendants that her daughter had the authority to bind her to an arbitration agreement. Further, the Court concludes that, under the circumstances here, defendants could not have inferred an agency relationship, for purposes of assuming an agreement to arbitrate.

As to whether Joyner had, "by implication," authorized her daughter to sign an arbitration agreement on her behalf, the facts do not support such an inference. As noted, Joyner's daughter had signed the document outside the presence of her mother at the time when her mother was admitted to the defendants' rehabilitation center. (Decl. of Shervon Hogsett [8-1] at ¶¶ 5, 13.) According to Hogsett, no one on defendants' staff inquired whether she had authority to sign an arbitration agreement for her mother, (*id.* at 5), and defendants have offered no affidavits to the contrary on that point or to establish that staff had asked Joyner whether she consented to having her daughter sign an arbitration agreement.

Even assuming that Joyner must have deduced that her daughter had signed whatever documents Parkwood had required for her

14

admission, as Joyner would have known that she had signed nothing, one cannot assume that Joyner would have had the sophistication to understand that, included among the standard medical forms, would be a separate agreement to give up her right to a jury trial should the rehabilitation center be guilty of negligence.  Indeed, as defendant has conceded, Joyner's consent to the arbitration agreement was not a prerequisite to her admission, and she would have been admitted to the facility even had she known about the arbitration agreement and had refused to sign it.  (*See* Defs.' Mot. to Dismiss [4] or Reply Br. [12].)

Moreover, even as to the admission document, defendants could not have inferred authority under a necessity-type of principle, which arguably might arise--at least as to the signing of the standard admission forms, if not an arbitration agreement--had Joyner been too ill to sign any forms at the time of her admission.  Joyner was only 63-years old and, while she had previously had part of her leg amputated, defendants have provided no affidavits indicating that their staff perceived her to be mentally or physically incompetent to sign such a document.

Certainly, it would be an unwise policy to require a nursing home or rehab center to turn away a patient in need of treatment who is physically or mentally unable to sign an admission form.  Medical crises can arise suddenly and not all persons have prepared for such

15

occasions by previously executing health care powers of attorney. Aware of the difficulties that such situations present, the Georgia legislature has enacted a statute that seeks to address this potential problem. O.C.G.A. § 31-9-2(a)(1) and (1.1) provides that consent for medical treatment can be given by an adult person for himself or by any person having a durable power of attorney for health care. The statutes goes on to provide that, where there is no power of attorney, a spouse may give consent for treatment, as may the parent of a minor child or a person temporarily acting in loco parentis, even without formal credentials. O.C.G.A. § 31-9-2(a)(2)-(4). Finally, where the patient is unable to consent for himself and where there is no other individual who fits within the categories identified above, an adult child, among others, may consent for treatment for her parent. O.C.G.A. § 31-9-2(a)(6)(A).

It is uncertain that Hogsett's signature would have satisfied O.C.G.A. § 31-9-2's requirements for consent to medical treatment, as there has been no effort by the defendants to argue or show that Joyner was unable to consent for herself. Even had Hogsett's consent been valid under this statute, however, the statute addresses consent to medical treatment, <u>not</u> consent to submitting to arbitration any claims of negligence against the rehab center.[12]

---

[12] As it happens, the Georgia Senate is currently considering legislation that would permit a wide-ranging group of people other than the resident to consent to arbitration of claims against

16

Finally, to the extent that defendants recognized an "implied" authority for Joyner's daughter to sign the arbitration agreement, inasmuch as she had signed the admission paperwork, they did so in contravention of their own contractual representation that such a status could not be imputed without compliance with the requisite legal requirements. Specifically, the admission agreement drafted by Parkwood, and executed by it and plaintiff Hogsett, indicates that, when pertinent, a resident's "incapacity or delegation of decision-making authority <u>must be documented in the living center's records</u> in compliance with applicable Georgia statutes." (Defs.' Mot. to Dismiss [4] at Ex. A (emphasis added).) There was no such documentation of Joyner's incapacity nor any assertion by defendants that she was, in fact, incompetent to sign the arbitration agreement.

Accordingly, the Court concludes that defendants have failed to sufficiently allege or demonstrate that Hogsett had authority to bind

---

nursing-home or rehab center types of facilities. The proposed legislation would include in this group an adult child for her parent, and would not make the incapacity of the parent a prerequisite. *See* S.B. No. 202, Ga 152d Gen. Assemb. - 2013-2014, Reg. Sess. (Feb. 22, 2013), Proposed § 31-8-128(f)(6)("The following persons shall be authorized and empowered to execute an arbitration agreement on the resident's behalf:. . .(6) Any adult child for his or her parent, if he or she admitted the resident into the long-term care facility.")

Had this proposed statute been in effect when Joyner was admitted, then her daughter's consent to arbitration would be valid. This statute has not yet been enacted, however, and even should it be, it presumably would not apply to conduct preceding its effective date.

17

her mother to arbitration as to any available claims against the defendants.

        4.    Analogous Georgia Caselaw is Consistent With this Interpretation

This Court's decision is in accord with Georgia caselaw that has considered the issue of implied authority as it pertains to family members signing arbitration agreements for relatives who are admitted to nursing homes. In *Life Care Ctrs. of Am. v. Smith*, 298 Ga. App. 739 (2009), the defendant nursing facility sought to enforce an arbitration agreement signed by the resident's daughter. At the time the daughter signed the arbitration agreement, she had no general power of attorney, but only a durable power of attorney for health care decisions. The court of appeals found the agreement unenforceable in the later tort action against the nursing home because the daughter did not have the general power of attorney necessary to agree to submit the mother to arbitration. The court distinguished between the authority to seek medical care for another versus the authority to bind that other person to arbitration.

Similarly, in *Ashburn Health Care Ctr., Inc. v. Poole*, 286 Ga. App. 24 (2007), the husband signed an arbitration agreement upon his wife's admission to a nursing home. Although the husband did not hold power of attorney for his wife, he nevertheless signed the agreement, above a line listing him as an "authorized representative" of the wife. *Id.* at 26. The court of appeals held that the husband

18

AO 72A
(Rev.8/82)

did not have actual or apparent authority to sign the arbitration agreement on behalf of his wife, and, thus, the agreement was unenforceable.[13]

---

[13] Cases from other states that are in accord with *Ashburn* and *Smith* include: *Giordano ex rel. Estate of Brennan v. Atria Assisted Living, Virginia Beach, L.L.C.*, 429 F. Supp. 2d 732, 738 (E.D. Va. 2006)(no mutual assent to arbitration agreement, where "[Mother] did not sign the Residency Agreement; she did not give consent to [her daughter] to sign the Residency Agreement; [Mother] did not discuss with [her daughter] whether the agreement would be beneficial to her; and, there is no proof that [the mother] was, in fact, aware that the Residency Agreement existed."); *McNally v. Beverly Enters., Inc.*, 191 P.3d 363 (Kan. Ct. App. 2008)(wife signed arbitration agreement on behalf of husband but only had durable power of attorney to make medical decisions, and so no actual or implied authority existed); *Barbee v. Kindred Healthcare Operating, Inc.*, No. W2007-00517-COA-R3-CV, 2008 WL 4615858, at *6-9 (Tenn. Ct. App. Oct. 20, 2008)(son of decedent signed arbitration agreement upon parent's admission but did not have power of attorney; parent was incompetent at time of admission; son did not have actual or implied authority to act as agent); *Trinity Mission of Clinton, LLC v. Barber*, 988 So. 2d 910, 916 (Miss. Ct. App. 2007)(finding arbitration agreement was invalid and noting that the principal must hold the agent out as having authority; it is not sufficient that the agent alone hold himself out as a legal representative); *Sikes v. Heritage Oaks W. Ret. Vill.*, 238 S.W. 3d 807 (Tx. Ct. App. 2007)(wife of resident signed admissions documents, purporting to have power of attorney which she did not possess; arbitration agreement found unenforceable).

Some states' courts, however, have concluded that a family member *can* enter into an arbitration agreement on behalf of a relative without having explicit power of attorney or guardianship. However, in these cases, there is usually some evidence that the admitted individual gave permission to the signee to enter into agreements on his or her behalf. *See Carraway v. Beverly Enters. Ala., Inc.*, 978 So. 2d 27, 30-31 (2007)(brother could enter arbitration agreement on behalf of sister, though "[t]he arbitration agreement did not call for the signature of a legal representative; instead, it provided that 'a person duly authorized by the Resident' could sign the agreement on the resident's behalf"; additionally, the brother in *Carraway* attained power of attorney shortly after his sister was admitted to the nursing home); *Ruesga v. Kindred Nursing*

Defendants do not address *Smith* or *Ashburn* in their Reply brief. As these two cases contradict defendants' contention that Hogsett had implied authority, defendants' silence suggests a tacit recognition that controlling Georgia authority disfavors their arguments here. Moreover, as there is no binding arbitration agreement between the defendants and Joyner's estate, there would appear to be no theory under which the individual wrongful death act claim of Joyner's surviving spouse, Gary, would be subject to a now-invalidated arbitration agreement. Certainly, defendants advance no arguments. Therefore, the Court concludes that the individual claims of surviving spouse, Gary Joyner, are not subject to the arbitration agreement signed by Hogsett. Further, had the estate claims originally made in the complaint not been dismissed by plaintiffs, they would also not be subject to the arbitration agreement.

## II.   **ENFORCEABILITY OF ARBITRATION AGREEMENT AS TO CLAIMS MADE BY PLAINTIFF SHERVON HOGSETT IN HER INDIVIDUAL CAPACITY**

As noted, plaintiff Shervon Hogsett, the daughter of the deceased Patricia Joyner, has brought claims on her own behalf as a

---

*Ctrs., L.L.C.*, 215 Ariz. 589, 595-597 (Ariz. Ct. App. 2007)(husband empowered his wife to enter arbitration agreement on his behalf, but only after defendant nursing home presented extensive evidence that the husband authorized wife in the past to make medical decisions on his behalf); *Necessary v. Life Care Ctrs. of Am., Inc.*, No. E2006-00453-COA-R3-CV, 2007 WL 3446636, at *5 (Tenn. Ct. App. Nov. 16, 2007)(wife authorized to enter arbitration agreement on her husband's behalf, where husband had expressly authorized his wife to enter into other agreements on his behalf).

result of her mother's death.  Although it is not easy to discern from reading the Complaint exactly what claims Hogsett or Gary Joyner are making, defendants indicate that any remaining claims by them are wrongful death claims.

Defendants have argued that even if Patricia Joyner did not agree to arbitration, Hogsett unquestionably signed the arbitration agreement, so at least the claims brought in Hogsett's individual capacity should be subject to arbitration.  (Defs.' Reply Br. [12] at 10-11.)  This is a trickier issue and one on which there is no clear Georgia authority.

At the outset, the Court assumes that had the arbitration agreement been deemed to be enforceable as to the decedent Joyner and her estate, then it also would have been enforceable as to any individual wrongful death claims brought by her survivors, regardless of whether any of those survivors had signed the agreement.  *Cf. Turner v. Walker Cnty.,* 200 Ga. App. 565, 566 (1991)(although the cause of action created by the wrongful death statute is a different action than the one the decedent would have possessed against a tortfeasor, any defense which would have been good against the decedent also applies to any persons bringing a wrongful death action); *accord Mowell v. Marks,* 269 Ga. App. 147, 151 (2004).

The question here is whether the converse is true: does the unenforceability of the agreement as to the decedent and her estate

AO 72A
(Rev.8/82)

mean that the arbitration agreement is also unenforceable against the survivor who actually signed the arbitration agreement: Shervon Hogsett? Equitable principles might suggest that such a survivor should not, as to her individual claim, be allowed to block an arbitration agreement that she, herself, signed. On the other hand, the arbitration agreement was never between Hogsett and the Parkwood Center, but was between the "Resident" (Joyner) and a "Living Center" (Parkwood Nursing and Rehabilitation Center). Further, applying the goose-gander rule, as the wrongful death claim is a derivative claim that takes on all defenses available against the decedent's claim, arguably then such a claim should not be subject to agreements to which the decedent would have been immune.[14]

Yet, given the lack of clarity as to exactly which claims from the original complaint are still viable, after the dismissal of the estate claims, and given the Court's uncertainty as to whether plaintiff Hogsett is even an appropriate plaintiff for this claim, a decision on the above question may be premature. Specifically, although the parties have not discussed the requirements for bringing a wrongful death action, the undersigned has looked at what appears to be the applicable statute: O.C.G.A. § 51-4-2. That statute

---

[14] The Georgia cases (*Smith* and *Ashburn*) do not address this question, but the *Sikes* case from Texas is in accord with this conclusion. *Sikes*, 238 S.W. 3d at 810 ("[T]he arbitration agreement is unenforceable against [the daughter] in her individual capacity because there is no evidence that she signed in that capacity.").

AO 72A
(Rev.8/82)

provides that it is the "surviving spouse," who may bring an action for wrongful death[15] under this statute, or "if there is no surviving spouse, a [surviving] child or children...may recover." O.C.G.A. § 51-4-2(a). Ultimately, the surviving spouse has the power to dismiss or settle with the alleged "wrongdoer without the concurrence of the child or children...", O.C.G.A. § 51-4-2(c), but any recovery "shall be equally divided...among the surviving spouse and the children per capita." O.C.G.A. § 51-4-2(d).[16]

From reading the above statute, it appears that it is Gary Joyner, the decedent's surviving spouse, who has standing to bring a wrongful death action, not the decedent's daughter, Shervon Hogsett. *See Moore v. Mylan Inc.,* 840 F. Supp. 2d 1337, 1343 (N.D. Ga. 2012)(Shoob, J.)(internal citations omitted)(holding that where there is a surviving spouse, only that spouse may bring the wrongful death

---

[15] The statute actually speaks of "homicide" in this subsection, not "wrongful death," but uses the latter term in subsections (b)(1) and (2). The Court assumes that the terms are intended to be synonymous and not limited to actions based only on a homicide.

[16] This dissection of the wrongful death statute provides another reason why it seems incongruous to hold that plaintiff Hogsett is precluded from bringing an individual wrongful death action as a result of her having signed the arbitration agreement as her mother's legal representative. That is, a wrongful death action is brought for the surviving spouse and all surviving children. Were there no surviving spouse here, but only multiple surviving children, it would seem peculiar to say that the surviving child who signed the arbitration agreement could not sue, yet the other surviving children could do so. As the statute makes it automatic that any damages will be divided equally, it is difficult to understand how one would enforce such a prohibition.

AO 72A
(Rev.8/82)

action, which he brings both as an individual and as a representative of any children of the deceased).

If the above is so, and the *Moore* decision cites two Georgia Court of Appeals decisions in support, then it would appear that only surviving spouse Gary Joyner has standing to bring a wrongful death claim, albeit he acts as a representative of daughter Shervon Hogsett. Further, if the above is true, then there would be no need to decide whether Hogsett is bound by the arbitration agreement she signed, as she would no longer be a properly-named plaintiff.

For this reason, the Court **DENIES** defendants' motion to dismiss and compel arbitration [4-1 and 4-3] as to plaintiff Gary Joyner, and **DENIES WITHOUT PREJUDICE** defendants' motion to dismiss and compel arbitration [4-1 and 4-3] as to plaintiff Shervon Hogsett. Plaintiffs Joyner and Hogsett are directed to file an amended complaint setting out their existing claims. Before filing that complaint, plaintiffs will need to decide whether plaintiff Hogsett should be included as a plaintiff. If they do include her, then defendants may file a renewed motion to dismiss Hogsett's claim and compel arbitration. If they do not, the Court will direct the parties to submit a proposed scheduling order. Until that time, the Court **GRANTS** defendants' motion to stay the litigation [4-2]. The Court further **GRANTS as unopposed**, defendant Covenant Dove Holding

24

Company, LLC's Motion to Dismiss for Lack of Personal Jurisdiction [3].

**CONCLUSION**

For the reasons stated above, the Court **DENIES** defendants' Motion to Dismiss and Compel Arbitration [4-1 and 4-3] as to plaintiff Gary Joyner; **DENIES WITHOUT PREJUDICE** defendants' Motion to Dismiss and Compel Arbitration [4-1 and 4-3] as to plaintiff Shervon Hogsett; and **GRANTS** defendants' Motion to Stay the litigation [4-2]. Defendant Covenant Dove Holding Company, LLC's Motion to Dismiss for Lack of Personal Jurisdiction [3] is **GRANTED as unopposed.**

Plaintiffs shall file an Amended Complaint by **April 8, 2013**.

SO ORDERED, this <u>6th</u> day of MARCH, 2013.

/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)